UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG BROWN,

        Petitioner,

v.

        CASE NO. 2:09-CV-10735
        HONORABLE ARTHUR J. TARNOW
        UNITED STATES DISTRICT JUDGE

KENNETH J. AUD, et. al,

        Respondent.
_____/

**OPINION AND ORDER GRANTING THE
PETITION FOR WRIT OF HABEAS CORPUS**

Craig G. Brown, ("Petitioner"), currently residing in Pontiac, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for possession with intent to deliver trenbolone, M.C.L.A. 333.7401(2)(b)(ii); and possession of trenbolone, M.C.L.A. 333.7403(2)(a)(ii). This Court concludes that Michigan law is unconstitutionally vague as to whether Trenbolone, the drug contained in the Finaplix–H that petitioner had in his possession, is a controlled substance classified in schedule 1, 2, or 3 under Michigan's controlled substance laws. Accordingly, the petition for writ of habeas corpus is GRANTED.

**I. Background**

Petitioner was convicted following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

Defendant was a police officer with the Almont Police Department and the Brown City Police Department. Lieutenant Timothy Donnellon of the St. Clair County Sheriff's Department testified that in February 2003, he was investigating Brown City Police Officer Albert Geoit for anabolic-steroid use. Donnellon testified that the Geoit investigation led him to investigate defendant. The search warrants issued in this case indicate that Geoit told the police that defendant supplied him anabolic steroids.

Donnellon asked Michael Winters, an inspector with the Postal Inspection Service, to intercept any suspicious parcels addressed to P.O. Box 364, Lakeville, Michigan, which is within Oakland County. The post office box was registered to defendant, and only defendant had access to the post office box. On February 28, 2003, a parcel arrived for defendant's post office box. Winters requested a federal search warrant to inspect the parcel. After obtaining the warrant, Winters executed the search himself. The parcel contained 10 packages of Finaplix–H, which the Michigan State Police laboratory confirmed contained Trenbolone. The package did not contain an applicator for animal injection. At trial, Winters admitted that defendant did not arrive to pick up the parcel. Winters also admitted that he had previously testified that, in regard to Trenbolone, "[i]f it's for veterinary use, its legal."

On March 1, 2003, Donnellon executed a warrant to search defendant's residence. The owner of the building, Gladys Graves, lived on the second story and defendant rented the first floor. The police found evidence linking defendant to the first floor, including a filled-out employment application and credit cards. In the only first-floor bedroom that appeared to be lived in, the police found a magazine, "Anabolics 2000," laying on the bed. In the first-floor kitchen, the police found a topical anabolic steroid, Testosterone Androgel, which is available by prescription. The police discovered additional anabolic-steroid-related magazines. The police also found defendant's credit-card statements reflecting purchases from Websa Co., the source of the Finaplix–H in the parcel, and Finafarm, a company that sells a kit that makes possible the human consumption of anabolic steroids (kit). Lapeer County Sheriff Detective Nancy Stimson recovered such a kit in a garbage bag from defendant's house. Donnellon ordered a kit from Finafarm, and Stimson testified regarding the similarities between the kit found at defendant's residence and the kit ordered by Donnellon. Donnellon also testified that the kit he received was very similar to the kit found in defendant's residence.

At trial, Stimson also testified that Graves had a computer upstairs that Graves allowed the police to search. Stimson brought the computer to Robert Gottschalk, an expert in electronic-data retrieval, for investigation. Gottschalk removed the hard drive and used EnCase forensic software to make a copy of the hard drive. Gottschalk testified that EnCase software allows

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

reproduction of all files that have not been overwritten, including Internet files. In particular, he testified that

> it created—it created the image, which is a—refer to as a mirror image, is an exact copy of everything that's on the hard drive; not only the data but everything else that's there. Maybe a file that was deleted at one time. It copies all of the data off of it.

Gottschalk searched the copied hard drive for anabolic-steroid-related terms, and found numerous e-mails relating to defendant's purchases of anabolic steroids.

Donnellon also obtained a warrant to search defendant's urine for anabolic steroids. Defendant refused to provide a urine sample several times, but he eventually did so. The sample was sent to American Institute of Toxicology (AIT). Defendant's urine sample first was tested generally for steroids, but not specifically for Trenbolone. The test was negative, but Michael Evans, founder and director of AIT, later retested defendant's urine specifically for Trenbolone, and it was positive.

Evans, an expert in toxicology, testified that Trenbolone is used in veterinary practices to increase muscle mass in cattle. A special syringe injects a pencil-like Trenbolone pellet into cattle to be slowly released. He testified that Trenbolone can be extracted from the pellets with a kit; specifically, a conversion kit like that received by Donnellon, which is similar to the one found at defendant's residence. Evans testified that each Finaplix–H package in defendant's post office box contained 20,000 milligrams of Trenbolone, which is between 200 and 400 dosages. He testified that this amount is more than one human would require. Evans testified that Trenbolone is inappropriate for use in smaller animals, such as cats and dogs.

Michael Henry, defendant's friend, testified for the defense. Henry testified that he asked defendant to order Finaplix–H for Henry's dog.

*People v. Brown,* 279 Mich. App. 116, 119-22; 755 N.W.2d 664 (2008).

A majority of the Michigan Court of Appeals affirmed petitioner's conviction *Id,* with Helene White dissenting. She concluded that Mich. Admin Code, R 338.3122(2), did not plainly and unambiguously provide that the possession of Trenbolone in a form

3

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

that is "expressly intended for administration through implants to cattle or other nonhuman species and which has been approved by the United States Drug Enforcement Administration (DEA) for such administration" is illegal if the possessor intended the Trenbolone for human consumption. *Id.,* at 146-49 (White, J., dissenting).

On February 26, 2009, petitioner filed his petition for writ of habeas corpus, while his application for leave to appeal was still pending with the Michigan Supreme Court. Petitioner asked this Court to hold his petition in abeyance pending the completion of his application for leave to appeal in the Michigan Supreme Court, because his probation was scheduled to expire on May 8, 2009. Petitioner feared that if his probation expired prior to that court issuing a decision, any subsequently filed habeas application would become moot, because petitioner would no longer satisfy the "in custody" requirement for bringing a habeas petition. This Court held the petition in abeyance pending the completion of petitioner's appeal in the Michigan Supreme Court, agreeing that a dismissal of petitioner's habeas application without prejudice could preclude petitioner from obtaining habeas relief should his term of probation expire prior to the Michigan Supreme Court rendering a decision in his case. *Brown v. Aud,* No. 2009 WL 649830, * 2-3 (E.D. Mich. March 10, 2009)[1]

---

[1] The Michigan Department of Corrections' Offender Tracking Information System (OTIS), which this Court is permitted to take judicial notice of, *See Ward v. Wolfenbarger,* 323 F. Supp. 2d 818, 821, n. 3 (E.D. Mich. 2004), indicates that petitioner has now been discharged from probation.

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

The Michigan Supreme Court denied petitioner leave to appeal. *People v. Brown*, 485 Mich. 1073, 777 N.W.2d 147 (2010). On March 9, 2010, this Court reinstated the petition for writ of habeas corpus to the Court's active docket.

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Whether Mich. Adm. Code R. 338.3122 is void for vagueness.

II. Whether trial counsel was ineffective for (1) failing to object to the trial court's interpretation of Mich Adm. Code R. 338.3122; (2) failing to cross-examine the person who performed the urine analysis; and (3) failing to object to the prosecutor's statements regarding defense witness Mike Henry.

III. Whether the prosecutor committed misconduct.

IV. Whether petitioner was entitled to have his medical records suppressed at trial where there is no evidence that his medical records were admitted.

V. Whether the search warrant for petitioner's urine violated the Fourth Amendment.

VI. Whether Postal Inspector Mike Winters exceeded the scope of a federal search warrant by seizing Finaplix.

VII. Whether the affidavit supporting the search warrant to Petitioner's home was knowingly false.

VIII. Whether the warrantless search of Petitioner's e-mail violated the Fourth Amendment.

## II.  Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claim # 1. The vagueness claim.**

Petitioner first argues that his convictions should be set aside because Michigan law is vague as to whether Trenbolone, the drug contained in the Finaplix–H that petitioner had in his possession, is a controlled substance classified in schedule 1, 2, or 3 under Michigan's controlled substance laws. Petitioner specifically contends that Michigan Board of Pharmacy Rule 338.3122 is unconstitutionally vague because

6

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

although it defines Trenbolone as a schedule 3 controlled substance, it fails to provide fair notice of prohibited conduct because it exempts an anabolic steroid from being a controlled substance if it is expressly intended for administration through implants to cattle or other nonhuman species, but does not state that the possession of an anabolic steroid in this form is illegal if the possessor intended to use the steroid for human consumption.

> M.C.L.A. 333.7401(1) provides:
>
> Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form. A practitioner licensed by the administrator under this article shall not dispense, prescribe, or administer a controlled substance for other than legitimate and professionally recognized therapeutic or scientific purposes or outside the scope of practice of the practitioner, licensee, or applicant.
>
> M.C.L.A. 333.7403(1), provides that:
>
> [a] person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless the controlled substance, controlled substance analogue, or prescription form was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.
>
> Michigan Board of Pharmacy Rule 338.3122(1), entitled, "Schedule 3; anabolic steroids; exemptions," states that,
>
> [u]nless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation that contains any quantity of an anabolic steroid, including its salts, isomers, and salts of isomers if the existence of such salts of isomers is possible within the specific chemical designation, is included in schedule 3. As used in this rule, the term "anabolic steroid" means any of the following drugs or hormonal substances which are chemically and pharmacologically related to testosterone, other

7

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

than estrogens, progestins, and corticosteroids, and which promote muscle growth[.]

Michigan Board of Pharmacy Rule 338.3122(1)(w) then expressly identifies Trenbolone as one such anabolic steroid.

Michigan Board of Pharmacy Rule 338.3122(2) provides that:

"[a]n anabolic steroid which is expressly intended for administration through implants to cattle or other nonhuman species and which has been approved by the United States drug enforcement administration for such administration is specifically excepted from schedule 3."

Trenbolone is one such anabolic steroid that has been approved by the United States Secretary of Health and Human Services for administration through implants to cattle or other nonhuman species. See 21 CFR 1308.

A majority of the Michigan Court of Appeals rejected petitioner's argument that Mich. Admin Code R 338.3122 was void for vagueness. The majority concluded that the rule was not impermissibly vague because it focused on the possessor's intent and not the form that the steroid was in, thus, the possession of a steroid intended for human consumption or use, rather than for use in cattle, was illegal, despite the fact that the steroid would have to be converted for human use. *Brown,* 279 Mich. App. at 124-25.

The dissent disagreed with the majority's conclusion that Mich. Admin Code R 338.3122 "plainly and unambiguously" indicated that possession of Trenbolone in a form that was "expressly intended for administration through implants to cattle or other nonhuman species and which has been approved by the United States drug enforcement administration for such administration" was illegal if the possessor

8

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

intended the Trenbolone for human consumption. *Brown,* 279 Mich. App. at 146 (White, J., dissenting).  Judge White noted that Trenbolone is an anabolic steroid that has been approved by the United States Secretary of Health and Human Services for administration through implants to cattle or other nonhuman species. *Id.,* at 147 (citing 21 CFR 1308).  Judge White further observed that petitioner had possessed Trenbolone in this implant form. *Id.*  Judge White then indicated:

> The majority concludes that the rule [Mich. Admin Code R 338.3122] clearly and unambiguously focuses on the possessor's intent with respect to the substance, rather than the intent of the manufacturer or the seller.  The majority concludes that although the Trenbolone at issue is expressly intended for administration through implants to cattle, and would therefore not be a controlled substance in the hands of someone who intended to administer it to an animal, it is nevertheless a controlled substance in the hands of someone who does not intend to use it for this purpose.
>
> I do not agree that no guesswork is required in applying Rule 338.3122, or that it plainly and unambiguously identifies Trenbolone as a controlled substance and only exempts its possession if the possessor expressly intends that the drug be administered through implants to cattle or other nonhuman species.  Rule 338.3122 does not unambiguously so provide.  Rather, it identifies Trenbolone as a schedule 3 controlled substance and then states that if it is expressly intended for administration through implants to animals, it, the Trenbolone, rather than its use, is excepted from schedule 3.  The focus is on the substance and whether it is a controlled 3 substance.  The clause "and which has been approved by the United States drug enforcement administration for such administration" supports this interpretation.  The United States Drug Enforcement Administration does not approve the possession and use of a drug by individuals, rather it approves the manufacture and use of a drug for specific purposes in specific forms.  The phrase "which is expressly intended for administration through implants to cattle or other nonhuman species and which has been approved by the United States drug enforcement administration for such administration" strongly implies that the word "intended" is directed at the use for which the drug is expressly made and approved, and not the use intended by the possessor.  **A person of ordinary intelligence would not be on notice**

9

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

**that Trenbolone that is in a form expressly intended for administration through implants to cattle is a schedule 3 substance**.

*Brown,* 279 Mich. App. at 147-49 (White, J., dissenting)(emphasis added).

Under the Federal Constitution, "a criminal statute must give fair warning of the conduct that it makes a crime." *Bouie v. City of Columbia*, 378 U.S. 347, 350 (1964) The Supreme Court has indicated that "[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357 (1983).  "[I]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  A law thus fails to comport with the Due Process Clause of the federal constitution "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits...." *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03 (1966). Indeed, the purpose of the Due Process Clause's fair notice requirement is to enable an ordinary citizen to conform his or her conduct to the law, because "[N]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999)(quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).  The problem with a vague law or statute is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned,* 408 U.S. at 108-09.

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

The Michigan Court of Appeals' conclusion that Mich. Admin Code R 338.3122 clearly and unambiguously provides that possession of Trenbolone in a form that is expressly intended to be administered through implants to cattle or other nonhuman species becomes illegal if the possessor intends the Trenbolone for human consumption is contrary to, or an unreasonable application of clearly established law. The sharp dissent in this case offers a compelling and persuasive argument that the majority's conclusion was unreasonable, justifying habeas relief for petitioner. *See Rockwell v. Yukins,* 341 F. 3d 507, 516-17 (6th Cir. 2003)(Clay, J., dissenting).

It is uncontested by the parties both here and in the state courts, that Finaplix-H, the drug seized from petitioner, can be purchased without a prescription. Finaplix-H is produced by its manufacturer in a pellet form and then sealed within a plastic container that is designed for insertion into the handle of an implant gun. Petitioner received the Finaplix in this form at his post office box. Michael Winters, an inspector for the Postal Inspection Service, admitted at trial that it is legal to use Trenbolone for veterinary use, as did Michael Evans, who testified as an expert in toxicology. Although Mich. Admin Code R 338.3122(1)(w) names Trenbolone as a controlled substance unless it is otherwise excepted, Mich. Admin Code R 338.3122(2) then indicates that any anabolic steroid "which is expressly intended for administration through implants to cattle or other nonhuman species and which has been approved by the United States drug enforcement administration for such administration is specifically excepted from schedule 3." Trenbolone is an anabolic steroid that has been approved by the United

11

States Secretary of Health and Human Services for administration through implants to cattle or other nonhuman species. 21 CFR 1308.

Mich. Admin Code R 338.3122(2) states that if Trenbolone (or any other anabolic steroid) is expressly intended to be administered through implants to cattle or other nonhuman species, the drug is excepted under Michigan law from being a controlled substance. The Administrative Rule says nothing about the intended use of the Trenbolone, but rather, whether the drug has been manufactured in a form that can be implanted into cattle or other nonhuman species. As indicated in the dissent, the focus of the exemption contained in Rule 338.3122(2) is on the form of the substance and whether it qualifies as a controlled substance, not on how the possessor intends to use the substance. *See Brown,* 279 Mich. App. at 148. Moreover, as the dissent also notes, this interpretation is supported by the clause in the Administrative Rule which only exempts any anabolic steroid "which has been approved by the United States drug enforcement administration for such administration"*,* because the DEA "does not approve the possession and use of a drug by individuals, rather it approves the manufacture and use of a drug for specific purposes in specific forms." *Id.*

A comparison of the text of Mich. Admin Code R 338.3122 to federal law further buttresses this Court's conclusion that the administrative rule is impermissibly vague concerning whether the possession of Trenbolone in a form intended for use in animals becomes illegal if the possessor intends to use the Trenbolone for human consumption. Unlike Michigan law, federal law states that while an anabolic steroid is not considered a controlled substance if it "is expressly intended for administration

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

through implants to cattle or other nonhuman species and which has been approved by the Secretary of Health and Human Services for such administration[.]",*See* 21 U.S.C. § 802 (41)(B)(i), federal law further indicates that any such steroid will be placed back onto the federal controlled substances list if it is "prescribed, dispensed, or distributed for human use." *See* 21 U.S.C. § 802 (41)(B)(ii); *See also* 21 CFR 1308.26(b).

By contrast, neither Michigan's controlled substances laws nor the Administrative Rules clearly indicate that any steroid which is intended for administration through implantation to cattle or other nonhuman species will be placed back onto Michigan's controlled substances list and considered illegal to possess if the steroid in this form is prescribed, dispensed, distributed, or sold for human use. Unlike federal law, Rule 338.3122(2) is silent about the possessor's intent. Nor does the rule contain any prohibition against the human consumption of any steroid that is intended by its manufacturer or seller to be implanted into cattle or other nonhuman species. Because Rule 338.3122(2) is ambiguous at best concerning whether the possessor's intended usage of the steroid that is manufactured for usage in cattle or other nonhuman species effects whether it will be considered a controlled substance, it is void for vagueness.

In the present case, a person of ordinary intelligence would not be placed on notice by Mich. Admin Code R 338.3122 or any other provision of Michigan law that Trenbolone that is packaged in a form that is expressly intended for administration through implants to cattle or other nonhuman species should be considered a schedule

13

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

3 substance that would be illegal to possess if the possessor intended to use the drug in this form for human consumption.  Because this law does not clearly and unambiguously give fair notice to persons of ordinary intelligence that any such steroid will be considered a controlled substance if the person possessing it intends to use if for human consumption, R 338.3122(2) is unconstitutionally vague.

      Finally, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, the Due Process Clause bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope. *See U.S. v. Lanier,* 520 U.S. 259, 266 (1997)(citing *Marks v. United States*, 430 U.S. 188, 191-92 (1977); *Rabe v. Washington*, 405 U.S. 313 (1972) (per curiam); *Bouie*, *supra*, at 353-354).  Therefore, even if it is proper for the Michigan Court of Appeals to apply prospectively its decision that Mich. Admin Code R 338.3122 bans the possession of Trenbolone in a form intended for use in animals if the possessor intends it for human usage, in light of the ambiguity of the Administrative Rule, as well as the fact that there are no prior judicial decisions that interpret Mich. Admin Code R 338.3122 in such a manner, it would violate the Due Process Clause to apply this novel construction of the Administrative Rule to petitioner's case.

      This Court concludes that Mich. Admin Code R 338.3122 is unconstitutionally vague, because it does not clearly and unambiguously provide that possession of Trenbolone in a form that is expressly intended to be administered through implants to

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

cattle or other nonhuman species, which was the form that petitioner possessed the drug, becomes illegal if the possessor intends the Trenbolone for human consumption.

The question becomes what the appropriate habeas remedy would be in this case. A federal habeas court has broad discretion in conditioning a judgment granting habeas relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). 28 U.S.C. § 2243 authorizes federal courts to dispose of habeas corpus matters "as law and justice require." An absolute or unconditional writ should issue where the nature of the error is incurable. *See Gentry v. Deuth,* 456 F. 3d 687, 692 (6th Cir. 2006). One situation in which an unconditional or absolute writ is appropriate is where a habeas petitioner was convicted under an unconstitutional statute or rule, as is the case here. *Id.*

This Court has determined that Rule 338.3122(2) is unconstitutionally vague, because it does not adequately put a person of ordinary intelligence on notice that Trenbolone or any other steroid that was intended for administration through implants to cattle or other nonhuman species would be considered a controlled substance if the possessor intended to use the drug for human consumption. Because this rule is unconstitutionally vague, the only appropriate remedy is to issue an unconditional writ and order that petitioner's possession with intent to deliver trenbolone and possession of trenbolone convictions be set aside.

In this case, petitioner's sentence has expired so there is no way that the Court can order his release from incarceration. This Court, however, has the power to order the expungement of petitioner's conviction, in addition to ordering his immediate

15

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

release. *See Satterlee v. Wolfenbarger,* 453 F. 3d 362, 370 (6th Cir. 2006). Indeed, because ongoing collateral consequences are assumed to flow from an unconstitutional conviction, and because the full relief that is implied by the grant of a writ of habeas corpus is the elimination of all such direct and collateral consequences, the nullification of the conviction and expungement of the conviction from a habeas petitioner's record "are naturally and necessarily implicit in granting the writ." *See Gall v. Scroggy,* 603 F. 3d 346, 352 (6th Cir. 2010)(citing *Gentry,* 456 F. 3d at 696). Petitioner is thus entitled to have his 2006 convictions and all of the effects stemming from them completely expunged from his record. *See Ward v. Wolfenbarger,* 340 F. Supp. 2d 773, 776-77 (E.D. Mich. 2004).

Accordingly, the judgment of conviction against petitioner for the offenses of possession with intent to deliver trenbolone and possession of trenbolone from the Oakland County Circuit Court from May 8, 2006 is vacated and the record of conviction shall be expunged. *Ward,* 340 F. Supp. 2d at 777. The Clerk of the Circuit Court of Oakland County, Michigan shall forward a copy of this Court's order to any person or agency that was notified of petitioner's arrest or conviction involved with these offenses. *Id.* A certificate of compliance shall be filed with this Court within 30 days of the receipt of this order. *Id.*

Because this Court's conclusion that petitioner is entitled to habeas relief on his vagueness claim is dispositive of the petition, the Court considers it unnecessary to

*Brown v. Aud,* U.S.D.C. No. 2:09-CV-10735

review petitioner's other claims and declines to do so. *See Satterlee v. Wolfenbarger,* 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005).

### IV. ORDER

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS UNCONDITIONALLY GRANTED. PETITIONER'S CONVICTIONS FOR POSSESSION WITH INTENT TO DELIVER TRENBOLONE AND POSSESSION OF TRENBOLONE ARE ORDERED TO BE VACATED AND EXPUNGED FROM HIS RECORDS BY THE CLERK OF THE CIRCUIT COURT FOR OAKLAND COUNTY, MICHIGAN IN ACCORDANCE WITH THE TERMS OUTLINED IN THIS OPINION.

S/Arthur J. Tarnow  
Arthur J. Tarnow  
Senior United States District Judge

Dated: June 18, 2012

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on June 18, 2012, by electronic and/or ordinary mail.

S/Catherine A. Pickles  
Judicial Assistant

17